# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1568V**
**Filed: October 19, 2026**

| | |
|---|---|
| VICTORIA S. PETROVIC, administrator of the Estate of KATHLEEN R. McNAMEE.,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Horner |

*Simina Vourlis, Law Offices of Simina Vourlis, Columbus, OH, counsel for petitioner.*
*Lynn Christina Schlie, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On July 13, 2021, Kathleen McNamee filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012).[2] (ECF No. 1.) The petition alleges that she suffered anaphylaxis, atrial fibrillation, vasoplegia, stroke, seizures, and sequela, after receiving an influenza ("flu") vaccination on October 16, 2020. (*Id.*) After Ms. McNamee later passed away, her estate representative, Victoria Petrovic, was substituted as petitioner. (ECF No. 67.)

On September 8, 2025, petitioner filed a motion seeking an award of interim attorneys' fees and costs totaling $151,173.05, including $76,559.70 for counsel's fees

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

and costs (inclusive of expert costs that have already been paid by counsel), $2,195.91 for probate legal services, and $58,225.00 in outstanding costs invoiced by Dr. Akbari. (ECF No. 94; Exs. 124-29.) In response, respondent deferred to the special master with respect to both the appropriateness and amount of any award. (ECF No. 95.)

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." § 300aa-15(e)(1)(A)-(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act to avoid undue hardship, although there is no presumption of entitlement to such fees. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1374-75 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352; *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 300 (2011).

Contemporaneous with this decision, a ruling on entitlement was issued finding petitioner entitled to compensation for Ms. McNamee's injury. (ECF No. 96.) And, given that this case will now proceed to a further damages phase of litigation, I conclude that an interim award of attorneys' fees and costs is appropriate, especially given the age of this case and the amounts at issue.

## I. Reasonable Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

A reasonable hourly rate is "the prevailing market rate, defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (internal quotation marks omitted). The decision in *McCulloch* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19-21 (Fed. Cl. Spec. Mstr. Sep. 1, 2015), *mot. for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sep. 21, 2015). The Office of Special Masters has

subsequently updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 and later years can be accessed online.[3]

Special masters may rely on their experience within the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484-86 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing. *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770, at *5 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reducing the overall fee award by 10% due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323, at *16-18 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reducing the overall fee award for Domengeaux Wright and the Andry Law Group by 20% and 40%, respectively, due to excessive and duplicative billing), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 96 Fed. Cl. 201, 209 (2009).

Here, Ms. Vourlis requests the following rates:

2020: $467 per hour
2021: $491 per hour
2022: $505 per hour
2023: $533 per hour
2024: $553 per hour
2025: $575 per hour

(Ex. 124, p. 18.) These rates are consistent with what counsel has previously been awarded and I accept them as reasonable rates in this case. *E.g.*, *Anderson v. Sec'y of Health & Human Servs.*, No. 22-1475V, 2025 WL 1752483 (Fed. Cl. Spec. Mstr. May 29, 2025); *Forbush v. Sec'y of Health & Human Servs.*, No. 19-1771V, 2022 WL 2251836, at *2 (Fed. Cl. Spec. Mstr. May 12, 2022). The requested paralegal rates of $163 and $172 for work performed in 2020 and 2021, respectively, are also reasonable. Moreover, based on a review of the billing records, the hours billed for both attorney and paralegal time appear to be reasonable overall. Accordingly, attorneys' fees are awarded in the amount requested.

## II. Reasonable Attorneys' Costs

Attorneys' costs must be reasonable as well. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.

---

[3] Each of the Fee Schedules can be accessed https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017 and later are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."). The bulk of the costs requested in this case are expert and estate costs as separately addressed below. The remaining costs include the petition filing fees, the costs of obtaining medical records, mailing expenses, and the cost of acquiring medical articles. (Ex. 125, p. 1.) I find that these costs are all reasonable.

Petitioner requests $6,000.00 for reimbursement of the work performed by her cardiology expert, Dr. C. Alan Brown, M.D. (Ex. 125, p. 1.) Dr. Brown billed 15 hours at a rate of $400 per hour to prepare two reports for this case. (*Id*. at 3-6.) I find this to be reasonable. *Accord Adams v. Sec'y of Health & Human Servs*., No. 19-929V, 2025 WL 1891970, at *5 (Fed. Cl. Spec. Mstr. June 13, 2025) (collecting cases for the proposition that cardiologists in the program generally receive $350-$500 per hour for their work).

Petitioner requests $2,195.91 in legal expenses incurred to open Ms. McNamee's estate for administration. (Ex. 126.) In response, respondent stresses that the Vaccine Act does not cover all legal implications of administering an estate and further that costs incurred without a court order or involvement by the respondent should generally not be compensated. (ECF No. 95, p. 1, n. 1 (quoting *Siegfried v. Sec'y of Health & Human Servs*., 19 Cl. Ct. 323, 325 (1990); *Greer v. Sec'y of Health & Human Servs.*, No. 16-1345V, 2018 WL 1125695, at *6 (Fed. Cl. Spec. Mstr. Jan. 17, 2018)). Nonetheless, respondent defers to the special master as to whether the specific costs in this case are compensable under the Act. (*Id.*) While it is possible that proceedings on a Vaccine Act petition can be a but for cause of estate costs, this has not been established on the existing record. *Accord Wen-Waldron v. Sec'y of Health & Human Servs*., No. 20-928V, 2026 WL 1006554 (Fed. Cl. Spec. Mstr. Jan. 7, 2026). Some of the probate attorney's billing records do reference providing updates to litigation counsel, but there has been no allegation that Ms. McNamee's death was related to her alleged vaccine injury and the billing records otherwise indicate that Ms. McNamee did have a will and that the estate was set up to effectuate the will. (Ex. 126, p. 2.) Accordingly, it appears that Ms. Petrovic's role as a representative petitioner is merely an extension of her role as an estate representative charged with administering Ms. McNamee's will and other affairs, rather than the costs of establishing the estate being necessitated by the instant petition. Thus, petitioner's request for estate administration costs is denied for purposes of the award of interim attorneys' fees and costs. If petitioner is able to delineate and substantiate that proceedings on the vaccine petition are the but for cause of any specific costs or legal fees associated with the estate, she may seek such costs in connection with the award of final attorneys' fees and costs.

Finally, and most significantly, Dr. Akbari has billed $65,725.00, representing 119.5 hours at a rate of $550 per hour to produce four reports. (Ex. 127.) In the motion, petitioner's counsel represents that Dr. Akbari has been advanced a retainer of $7,500.00 and has an outstanding balance of $58,225.00. (ECF No. 94, pp. 9, 11.) Regarding expert fees, "[t]he question is not whether [the expert] expended the number of hours claimed, but whether it was necessary or reasonable for him to do so." *Baker*

*v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (second alteration in original) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded to*, 24. Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993)). The Federal Circuit has ruled that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Therefore, "[o]ne test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure." *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319819, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009)); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *rev'd on other grounds*, 86 Fed. Cl. 201 (2009). And, ultimately, counsel has an obligation to monitor expert fees and costs. *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). Here, although the overall amount requested averages to roughly $16,000.00 per report, which is not an obviously outrageous figure, I conclude that Dr. Akbari's fees should be dramatically reduced for several reasons.

First, Dr. Akbari has a known history of engaging in substantial overbilling for which he provides only vague billing entries. *E.g.*, *Hager v. Sec'y of Health & Human Servs.*, No. 22-1252V, 2026 WL 2741081, at *3-4 (Fed. Cl. Spec. Mstr. Aug. 25, 2026); *Edson v. Sec'y of Health & Human Servs.*, No. 23-275V, 2026 WL 2620330, at *5-6 (Fed. Cl. Spec. Mstr. Aug. 13, 2026); *Ray v. Sec'y of Health & Human Servs.*, No. 20-321V, 2025 WL 2780387, at *5 (Fed. Cl. Spec. Mstr. Sep. 5, 2025); *Walters v. Sec'y of Health & Human Servs.*, No. 15-1380V, 2022 WL 1077311, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 23, 2022); *Nieves v. Sec'y of Health & Human Servs.*, No. 18-1602V, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023); *Reinhardt v. Sec'y of Health & Human Servs.*, No. 17-1257V, 2021 WL 2373818, at *5 (Fed. Cl. Spec. Mstr. Apr. 22, 2021). This includes instances where work was copied over from prior cases, *see Hager*, 2026 WL 2741081, at *3, and cases where work was deemed simply unnecessary, *see Nieves*, 2023 WL 7131801, at *5. I find that his billing in this case is consistent with that pattern. In particular, the billing records reflect substantial time devoted to researching medical literature that should have been familiar to Dr. Akbari based on his prior experience in the program. *Accord Hager*, 2026 WL 2741081. Thus, for example, in the ruling on entitlement, I explained that "Dr. Akbari's four reports in this particular case, which are overlong, overbroad, and often repetitive, are consistent with prior criticisms of his work." (ECF No. 96, pp. 15-16.) I also noted in the ruling on entitlement that Dr. Akbari's third report had slipped into a discussion of demyelinating conditions, which were not at issue in this case, strongly suggesting that he had engaged in copying and pasting despite his extensive billing. (*Id.* at 15.) And, indeed, he has been specifically cautioned about this in prior decisions. *Bristow v. Sec'y of Health & Human Servs.*, No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (noting that "I caution Dr. Akbari and counsel to endeavor to reduce the

number of hours billed henceforth"); *see also Galeno v. Sec'y of Health & Human Servs*., No. 21-824V, 2026 WL 2390645, at *24 & n.55 (Fed. Cl. Spec. Mstr. July 9, 2026) (providing a string cite of credibility concerns regarding Dr. Akbari's written reports within a decision denying entitlement and further noting that "[d]ue to this history of repeated behavior and his performance in the present case, Dr. Akbari's fees will be addressed accordingly").

Second, it was not reasonable for petitioner to seek to so extensively develop Dr. Akbari's opinion. After Dr. Akbari filed his first report, I held a Rule 5 Conference. At that time, I advised petitioner's counsel as follows:

> I also expressed concerns regarding Dr. Akbari's report. In his expert report, Dr. [Akbari] opines petitioner "experienced adverse effects after receiving a dose of fluzone high-dose quadrivalent influenza vaccine. Her adverse effects included chills, vomiting, diarrhea which started shortly after vaccine and severely continued and triggered stroke that eventually caused seizures." (Ex. 24, p. 5.) Support for this theory appears to have come from petitioner's treating cardiologist Dr. Hussain, who "noted that [petitioner's] vomiting and vasoplegia were found to be adverse side effects of the fluzone high dose influenza vaccine in post-marketing surveillance and [Dr. Hussain] suggested that this might be the reason for [petitioner's] stroke (Exhibit 4, p. 190)." (Ex. 24, p. 4.) Dr. Akbari, however, fails to explain how petitioner's flu vaccination caused her to develop vomiting, severe dehydration, and subsequent stroke and seizure. He dedicates several pages to providing a broad overview of the immune system and self-tolerance and to epidemiology related to the flu vaccine and stroke, but this is not instructive to his ultimate opinion on causation, which is based on the presence of an adverse reaction consisting of vomiting, diarrhea, and dehydration. The issues in Dr. Akbari's expert report are further born out in respondent's experts' reports. For example, as Dr. [MacGinnitie] offers, the onset of symptoms in this case within hours of vaccination is far too fast for an adaptive immune response to vaccination. (Ex. A, p. 7.) <u>Accordingly, I advised petitioner's counsel that I will be reviewing Dr. Akbari's billing records closely in this case as I am concerned that the substance of his report would not justify substantial billing.</u>

(ECF No. 38, pp. 2-3 (emphasis added).) During that conference, I instead advised petitioner that she would need "a cardiovascular specialist with clinical experience" to address the issues presented by this case. (*Id*. at 2.)

Subsequently, petitioner did file a report by Dr. Brown, who served as her clinical expert. Dr. Brown opined that petitioner's alleged acute episode inclusive of vomiting resulted in dehydration leading to her atrial fibrillation and stroke. (Ex. 47, p. 1.) And if there was any doubt as to the nature of Dr. Brown's opinion, he later emphasized in a supplemental report that, apart from the initial vaccine reaction leading to vomiting, petitioner's condition was explained as "a series of physiologic rather than immunologic

events." (Ex. 78, p. 1.) And, because Dr. Akbari is not a cardiologist (or even a medical doctor), both he and petitioner's counsel were aware that he lacked the qualifications necessary to present any stand-alone clinical opinion as to the likely causes of Ms. McNamee's stroke that would be inconsistent with Dr. Brown's assessment. Dr. Akbari's billing records reflect that he reviewed Dr. Brown's report and spoke with petitioner's counsel before commencing work on any of his three supplemental reports. Yet, despite this, Dr. Akbari's billing records show only about 12 hours of the 75.4 hours Dr. Akbari devoted to his three supplemental reports were specifically related to understanding the causes of nausea and vomiting, with substantial effort instead devoted to other immunologic concepts, including persistence in researching the effects of inflammation on the cardiovascular system. (Ex. 127.) Moreover, although petitioner was ultimately found entitled to compensation primarily based on Dr. Brown's opinion, the ruling on entitlement specifically found that the inflammasome theory Dr. Akbari presented in his three supplemental reports was not credible and concluded that his opinion "has distracted from more than illuminated the core issue in this case." (ECF No. 96, p. 14.)

Third, Dr. Akbari's requested rate of $550 per hour is not reasonable in this case. In a prior decision, I accepted a rate of $550 per hour for Dr. Akbari's work as a matter of inflation because he had consistently been awarded $500 per hour for about six years. *Robertson v. Sec'y of Health & Human Servs.*, No. 18-0554V, 2024 WL 1599577, at *2 & n.3 (Fed. Cl. Spec. Mstr. Mar. 18, 2024). However, in several subsequent decisions, other special masters declined to follow suit due to Dr. Akbari's performance issues and consistent practice of overbilling. *E.g.*, *Bettinger v. Sec'y of Health & Human Servs*., No. 23-1478V, 2025 WL 3267266, at *5 n.6 (Fed. Cl. Spec. Mstr. Oct. 27, 2025); *Moenig v. Sec'y of Health & Human Servs.*, No. 21-993V, 2026 WL 1229784, at *6 (Fed. Cl. Spec. Mstr. Mar. 23, 2026). Thus, for example, in a later case, I distinguished *Robertson* and explained that Dr. Akbari's reports were "overlong for the issues at stake in the case, indicating that he did not operate with the focus and efficiency expected of experts receiving the highest hourly rates." *Colon Mercado v. Sec'y of Health & Human Servs*., No. 20-395V, 2025 WL 3689121, at *4 (Fed. Cl. Sep. 18, 2025). Given the substantial criticism included herein, and given that it notably fits the pattern observed by the other special masters, $500 per hour is a more reasonable hourly rate for Dr. Akbari's services.

With regard to Dr. Akbari's initial report, his billing invoice reflects eight hours initially devoted to conferring with counsel and reviewing case specific materials. (Ex. 127, p. 1.) I find these hours are reasonably compensable. He then devoted 22.6 hours to research. (*Id.* at 1-2.) Given the nature of this research, the above-discussed issues, and the ultimate conclusion of his first report, I find this time excessive. I find that a 40% reduction is appropriate, which reduces that research time to 13.56 hours. He then spent 13.5 hours drafting and finalizing his report and preparing his invoice. (*Id.* at 2.) I accept these hours as reasonable overall; however, Dr. Akbari specified that 2.2 hours were devoted to drafting a seven-page section of the report addressing how vaccines can induce strokes and seizures via inflammation. (*Id.*) Given that Dr. Akbari's ultimate conclusion was not reflective of such an argument, I do not find that

this writing was reasonably undertaken. Thus, I find that a reasonable reimbursement for Dr. Akbari's initial report would be $16,430.00, which represents 32.86 hours at $500 per hour.

With regard to Dr. Akbari's second report, he initially billed 4.3 hours consulting petitioner's counsel and reviewing the other expert reports filed in the case, which are compensable. (Ex. 127, p. 4.) Thereafter, he billed 12.3 hours for research. While this research was ostensibly in support of the opinion that post-vaccination inflammasome activation could result in nausea and vomiting and in rebuttal to respondent's experts' opinions as to timing, this was not a reasonable path forward for the reasons discussed above and in the ruling on entitlement. Therefore, I do not find these research hours compensable on the whole. However, noting that Dr. Akbari's second report did introduce the study by Christian et al., which was credited in the entitlement ruling, I will credit the 2.4 hours that Dr. Akbari devoted to researching whether the flu vaccine can cause hypersensitivity leading to nausea and vomiting as a reasonable proxy for the work leading to the filing of this article. (*Id.*) Dr. Akbari devoted 8.7 hours to drafting and finalizing his report, downloading his 29 references, and preparing his invoice.[4] (*Id.* at 5.) However, given that much of the resulting report was not reasonable (and foreseeably so) in light of the limits of Dr. Brown's clinical opinion, I find that these hours should be reduced by half. Accordingly, I find that reasonable reimbursement for Dr. Akbari's second report would be $5,525.00, representing 11.05 hours at a rate of $500 per hour. And, because Dr. Akbari's citation to the Christian article was his only meaningful contribution to the question of whether the flu vaccine can cause nausea and vomiting, and because his third and fourth reports were overwhelmingly devoted to a defense of his inflammasome theory, which was neither credible nor reasonably necessary, I conclude that the hours devoted to Dr. Akbari's third and fourth reports are entirely non-compensable.

I am cognizant of the fact that the series of reductions identified above collectively amount to reduction of about two-thirds of Dr. Akbari's fee, which is unusually substantial. However, I have not engaged in a blanket reduction, but have specifically considered Dr. Akbari's hourly rate and the hours billed for specific tasks in each of his reports. *Accord Guerrero v. Sec'y of Health & Human Servs*., 120 Fed. Cl. 474, 481 (2015) (explaining that, when employing percentage reductions, special masters must include a "concise but clear" explanation for the reduction). Moreover, even viewing these reductions collectively, a reduction of this scale is warranted in light of all of the above. The size of the reduction is not punitive. It is simply a function of the amount of unnecessary work Dr. Akbari performed, despite forewarning, and of his excessive billing for that work.[5] *E.g., Liu v. Sec'y of Health & Human Servs.*, No. 10-

[4] Of note, Dr. Akbari has also previously been criticized for billing for administrative tasks. *Ampofo-Addo v. Sec'y of Health & Human Servs.*, No. 21-1231V, 2025 WL 4063222, at *4 (Fed. Cl. Spec. Mstr. Dec. 17, 2025); *Walters*, 2022 WL 1077311, at *6.

[5] To the extent other special masters have previously found that less significant reductions were sufficient to achieve rough justice, such determinations were reached on different records wherein Dr. Akbari's activities may have been more reasonable. Moreover, the use of overall percentage reductions likely leads to more conservative reductions, given that percentage reductions are subject to heightened

55V, 2020 WL 1023582, at *8-9 (Fed. Cl. Spec. Mstr. Jan. 30, 2020) (reducing an expert's hours by over 75% from 22 hours to 5 hours because, though it was reasonable to consult the expert, it was not reasonable to proceed with a full report given the circumstances of the case). Indeed, even after reduction, Dr. Akbari is still being reimbursed well over three times what Dr. Brown billed, even though it was primarily Dr. Brown's opinion rather than Dr. Akbari's opinion, that helped resolve this case in petitioner's favor.

I am also cognizant of the fact that respondent deferred to my discretion within his motion response, rather than specifically challenging the amount of the request for Dr. Akbari's services. However, Dr. Akbari has had ample warning from prior cases that his excessive fees are likely to be reduced. Moreover, I provided petitioner's counsel advanced notice in this very case that I felt Dr. Akbari's opinion appeared unlikely to be helpful and that I would be reviewing his billing closely, given my concern that substantial billing by Dr. Akbari would not likely be justified based on the nature of the issues presented. (ECF No. 38, pp. 2-3.)

In light of all of the above, petitioner is awarded costs in the reduced amount of $28,647.44.

## III. Conclusion

In light of the above, petitioner's first motion for award of interim attorneys' fees and costs at ECF No. 94 is hereby **GRANTED** with reductions.

**Petitioner is awarded a lump sum of $105,207.14, representing interim attorneys' fees and costs to be paid through an ACH deposit to petitioner's counsel of record, Simina Vourlis's IOLTA account for prompt disbursement.**

The clerk of the court shall enter judgment in accordance herewith.[6]

**IT IS SO ORDERED.**

---

scrutiny. *Guerrero*, 120 Fed. Cl. at 481. Based on what has transpired in this case, those more modest overall percentage reductions apparently have not adequately delivered the message to Dr. Akbari that only *reasonable* costs may be drawn from the Program's trust fund. The Court of Federal Claims has previously explained that,

> [w]hile the Court acknowledges the importance of petitioner access to quality expert support, it also recognizes the danger of rewarding experts for mere participation – particularly when such participation is substandard. Capable experts would not be encouraged to participate in vaccine litigation if their work was rewarded, and subsequently compensated, at the same rate as substandard experts.

*Frantz v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 137, 146 (2019).

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**s/Daniel T. Horner**
Daniel T. Horner
Special Master